1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAMAR R. WILLIAMS,                    )        No. C 08-5340 LHK (PR)
                                      )
                Petitioner,           )        ORDER DENYING PETITION
                                      )        FOR WRIT OF HABEAS
    vs.                               )        CORPUS; DENYING
                                      )        CERTIFICATE OF
WARDEN BOB HOREL,                     )        APPEALABILITY
                                      )
                Respondent.           )
_____ )

     Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court ordered Respondent to show cause why the petition should not be granted.  Respondent has filed an answer addressing the merits of the petition. Although given an opportunity, Petitioner has not filed a traverse.  Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and denies the petition.

## BACKGROUND[1]

     Petitioner, his brother, and Larona Jones, a girl who was dating Petitioner, went to the Giant Burger in Oakland late one night.  (Op. at 1.)  Around the same time, Lendell Waters,

---

[1] The facts of this case are taken from the California Court of Appeal opinion in People v. Williams, No. A113199, 2007 WL 1537632 (Cal. App. 1 Dist. May 29, 2007).  (Resp. Ex. 1 ("Op."))

George Carnegie, Siara Spriggs, and Stephanie Franklin also arrived at the Giant Burger.  (*Id.*)

At some point in the night, Jones mentioned to Petitioner that she believed Waters was "hitting

on" her.  (*Id.* at 1-2.)  Petitioner told Jones to return to the car while he went to talk to Waters.

(*Id.* at 2.)  Jones later told Petitioner that she thought Waters was sneering at Petitioner when

they were talking.  (*Id.* at 1-2.)  Petitioner borrowed his brother's phone and walked away from

the car for a moment.  (*Id.* at 2.)  Petitioner called his co-defendant, Lanare Wise, because he

thought Waters and his friends might shoot him.  (*Id.* at 3.)  Wise replied that he would come

join Petitioner right away.  (*Id.*)  Petitioner knew that Wise sometimes carried a gun.  (*Id.*)

Waters and his friends left in their car.  (*Id.* at 2.)  As Spriggs was driving, she heard gunshots

coming from the back right rear of the car driving to her left and she felt a bullet hit her leg.  (*Id.*)

She saw a rifle sticking out of the back right window of the car next to her and ducked down.

(*Id.*)

Witnesses testified that they saw Petitioner or Wise shooting at Waters' car.  (*Id.* at 2-3.)

Petitioner admitted pointing out Waters' car to Wise.  (*Id.* at 3.)  After Spriggs stopped her car,

she tried to run on foot, but fell because of her gunshot wound.  (*Id.*)  She was shot five times,

but survived.  (*Id.*)  Franklin, however, was shot in the back and died.  (*Id.*)  Waters was also

shot, but survived.  (*Id.*)  Carnegie was uninjured.  (*Id.*)

Petitioner told the police that he was the back of his brother's car when Wise began

unexpectedly shooting.  (*Id.* at 4.)  Later, Petitioner stated that he tried to shoot a shotgun but it

would not fire.  (*Id.*)  Then, after that, Petitioner admitted that the shotgun accidentally fired into

the air.  (*Id.*)  Petitioner testified that he did not know that Wise had a handgun with him and

when they were following Waters' car, Wise fired his handgun continuously at the other car.  (*Id.*

at 4-5.)

Petitioner was charged with the murder of Franklin, with special circumstances of murder

by shooting a firearm from a motor vehicle, and the attempted murder of Spriggs, Waters, and

Carnegie.  (*Id.*)  Petitioner was tried separately from his co-defendants.  The jury found

Petitioner guilty of first degree murder with special circumstances and three counts of attempted

murder.  (*Id.* at 5.)  Petitioner was sentenced to 65 years to life without the possibility of parole.

1    (*Id.*)

2          On direct appeal, the state appellate court affirmed the judgment, and the state supreme

3    court denied the petition for review.  The instant federal petition was filed on November 25,

4    2008.

### DISCUSSION

6    **A.  Standard of Review**

7          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

8    custody pursuant to the judgment of a state court only on the ground that he is in custody in

9    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

10   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

11   may not grant a petition challenging a state conviction or sentence on the basis of a claim that

12   was reviewed on the merits in state court unless the state court's adjudication of the claim

13   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

14   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

15   resulted in a decision that was based on an unreasonable determination of the facts in light of the

16   evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

17   both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S.

18   362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

19   *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

20          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

21   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

22   law or if the state court decides a case differently than [the] Court has on a set of materially

23   indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  A state court decision is an

24   "unreasonable application of" Supreme Court authority, falling under the second clause of

25   § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

26   Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

27   case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because

28   that court concludes in its independent judgment that the relevant state-court decision applied

1   clearly established federal law erroneously or incorrectly." *Id.* at 411.

2       Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

3   will not be overturned on factual grounds unless objectively unreasonable in light of the

4   evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.  The Court must

5   presume correct any determination of a factual issue made by a state court unless the Petitioner

6   rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. §

7   2254(e)(1).

8       In determining whether the state court's decision is contrary to, or involved an

9   unreasonable application of, clearly established federal law, a federal court looks to the decision

10  of the highest state court to address the merits of a Petitioner's claim in a reasoned decision.

11  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, that decision is the opinion of

12  the California Court of Appeal.

13  **B.    Petitioner's Claims**

14      Petitioner raises the following claims in his federal habeas petition: (1) the jury

15  instructions failed to properly instruct the jury that an aider and abettor can be found guilty of a

16  lesser crime, such as second degree murder, even if the perpetrator is guilty of a more serious

17  crime, such as first degree murder; and (2) the prosecutor committed misconduct during his

18  cross-examination of Petitioner.

19      1.    <u>Jury Instruction</u>

20      Petitioner claims that the CALCRIM jury instructions 400, 401, and 403 regarding aiding

21  and abetting were defective because they failed to inform the jury that he could be convicted as

22  an aider and abettor of a lesser crime than the crime committed by the actual perpetrator.  He

23  argues that by instructing the jury that the aider and abettor was "equally guilty" as the

24  perpetrator, and failing to specify the degrees of murder when discussing "natural and probable

25  consequences," the jury was misled to believe that it could not convict Petitioner of any lesser

26  crime if it found that the perpetrator committed first degree murder.

27      The California Court of Appeal rejected Petitioner claim.

28          Defendant argues that the instructions to the jury on his potential guilt as

an aider and abettor violated his right to due process because the jury was not sufficiently informed that defendant could be convicted of second degree murder even if the jury determined a first degree murder was committed by the perpetrator.  He bases his argument upon an analysis of the text of the aider and abettor instruction read to the jury and *People v. Woods* (1992) 8 Cal. App. 4th 1570.  FN7.  We are unpersuaded.  The verdict shows the jury was to consider second degree when it found defendant guilty of first degree murder as an aider and abettor.  The jury also determined true a special circumstance that the murder was perpetrated by means of discharge of a firearm from a motor vehicle that was intended by the defendant to cause death.  Moreover, this case is distinguishable from *Woods* because here the very act causing death was originally contemplated by the perpetrator in this case.

> FN7.  The text of the aider and abettor instruction read to the jury and the instructions on the lesser charge of shooting from a motor vehicle are reprinted in Appendix A, *post*, page 13.

Defendant testified at trial that he summoned Wise to the Giant Burger because defendant had a concern that he would be killed by Waters and his friends.  He knew Wise was occasionally armed.  He got into the car with Wise and pointed out the car carrying Waters and the other victims.  Then, defendant testified he was surprised to see the passenger next to him was armed with a shotgun, and Wise, apparently without indicating his intent to do so, emptied his handgun by shooting into the victims' car.  Defendant also testified that he did not direct Wise to do anything and that Wise acted on his own.  The jury obviously disbelieved defendant's testimony when it concluded that defendant was guilty of the special circumstance.  Moreover, it was incumbent on the prosecution to prove, and the jury to conclude, that "defendant knew the perpetrator intended to commit the crime" in order to convict him as an aider and abettor.

This is especially true because in this case at defendant's request the court instructed the jury that "[t]he evidence must show that an aider and abettor intended to facilitate or encourage the target offense of Penal Code 12034(d) [maliciously discharging a firearm from a motor vehicle] before or during the commission of the murder and attempted murders."  FN8.

> FN8. During deliberations, the jury asked the court, with reference to the general instructions on aiding and abetting: "At what point in time does the potential aider and abettor need to be clear on the intent of the perpetrator?  [¶]  Does he have to be clear on intent prior to or during his own words or conduct that indicate he is in fact aiding and abetting the perpetrator's commission of the crime?"  The court responded, with consent of counsel:  "The defendant must have knowledge of the intent of the perpetrator at the time he commits the acts which constitute aiding and abetting.  He may have obtained that knowledge either before or during the commission of those acts."

The instruction on the special circumstance of "committing murder by shooting a firearm from a motor vehicle" also stated in relevant part that: "To prove that this special circumstance is true, the People must prove that: [¶] 1) The defendant or Lanare Wise shot a firearm from a motor vehicle, killing Stephanie Franklin [¶] 2) The defendant or Lanare Wise intentionally shot at a person who was outside the vehicle [¶] AND [¶] 3) At the time of the shooting the defendant intended to kill."  (Italics added.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

While defendant acknowledges that the jury was instructed on second degree murder "in the abstract," he contends the jury "was not instructed on any legal basis of arriving at second degree murder under the natural and probable consequences theory of liability" and was thus "deprived of legal guidance on an essential element of the offense of second degree murder as it applied to the facts of this case . . . ."

We are not persuaded by defendant's argument that the jury could have found defendant guilty of first degree murder under the instructions given by imputing to defendant Wise's intent to kill.  FN9.  The language of the special circumstance instruction is explicit: while the first two elements could be satisfied by a finding that either defendant or Wise shot a firearm from a motor vehicle at a person outside the vehicle, the third element required the jury to find that defendant himself had the intent to kill at the time of the shooting. FN10. The jury was also instructed that defendant was required to have knowledge of the perpetrator's intent at the time he acted to aid and abet him, and that the murder was not a natural and probable consequence of the common plan if it was committed for an independent reason. (*See People v. Woods*, *supra*, 8 Cal. App. 4th at pp. 1583-1584.)  It must be presumed that the jury followed these instructions.  (*People v. Sanchez* (2001) 26 Cal. 4th 834, 852; *see also People v. Guiton* (1993) 4 Cal. 4th 1116, 1127.)

FN9. Nor does defendant contend that the prosecutor suggested any such imputed intent theory to the jury during argument.

FN10. The jury was not required to find that defendant himself fired a weapon to conclude that he participated with the intent to kill.

Thus, any arguable error in failing to explicitly instruct that an aider and abettor can be found guilty of a lesser crime than the perpetrator was harmless beyond a reasonable doubt in this case.  (*See People v. Hardy* (1992) 2 Cal. 4th 86, 192-193 [improper omission of instruction on intent-to-kill element of multiple-murder special circumstance for aider and abettor was harmless when jury necessarily found an intent to kill under other properly given instructions]; *see also People v. Prettyman* (1996) 14 Cal. 4th 248, 276 [defendant "suffered no prejudice from any possible error in failing to instruct on" lesser included offense "[b]ecause 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions'"]; *People v. Guiton*, *supra*, 4 Cal. 4th at p. 1130 [presentation to jury of legally inadequate theory does not require reversal when "it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory"]; *People v. Chavez* (2004) 118 Cal. App. 4th 379, 390 [erroneous felony murder instruction in drive-by murder case held harmless when, *inter alia*, "the instructions accurately advised the jury that the specific intent to kill while firing intentionally at a person outside the vehicle had to be proven by the prosecution"].)

(Op. at 6-8.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  In order to establish a due process violation, Petitioner must show both ambiguity in the

1   instructions and a "reasonable likelihood" that the jury applied the instruction in a way that

2   violates the Constitution, such as relieving the state of its burden of proving every element

3   beyond a reasonable doubt.  *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal

4   quotations and citations omitted).

5          Here, the instructions did instruct on every offense that is necessarily included in the

6   charge of first degree murder.  (CT 805-08.)  Thus, properly understood, the instructions given in

7   this case correctly advised the jury it might find Petitioner guilty of a lesser offense such as

8   involuntary manslaughter even if one whom Petitioner aided and abetted in committing the target

9   offense was guilty of a more serious offense, such as murder in the first degree.  It may be that

10  the instructions could have been clearer on this point, but Petitioner did not request a clarifying

11  instruction, and, regardless of what the state law requires, *see People v. Woods*, 8 Cal. App. 4th

12  1570 (1992), Petitioner is not entitled to federal habeas relief on the sole basis that the trial court

13  was under a state law obligation to give such a specific instruction sua sponte.  The instructions

14  as a whole specifically directed the jury that it could not find Petitioner guilty of murder unless

15  and until it found that Petitioner was guilty of aiding and abetting the discharge of a firearm from

16  a motor vehicle.  (CT 801; CALCRIM 403.)  Though the trial court did not explicitly remind the

17  jury that it could find Petitioner guilty of a lesser included non-target offense, considering the

18  instructions altogether, the Court cannot say that it was reasonably likely that the jury could have

19  applied the instructions in an unconstitutional manner.

20         Moreover, contrary to Petitioner's assertion, under these instructions, the jury could have

21  found that he aided and abetted in only the target offense, and that, because he had no knowledge

22  of Wise's intent to kill Franklin, first degree murder could not have ben a reasonably foreseeable

23  consequence of the target crime.  Indeed, although this was the theory of defense, the jury clearly

24  did not find it credible.  By informing the jury in CALCRIM 400 that one who aids and abets a

25  crime is equally as guilty as the perpetrator of that crime, the trial court did not imply that one

26  who aids and abets one crime is equally as guilty as the perpetrator may be of another crime.  If

27  the jury found that Petitioner aided and abetted in only the target crime, Petitioner would be as

28  guilty as the perpetrator of the target crime and of any other crime which the jury found to be the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.LHK\HC.08\Williams340den.wpd          7

1  natural and probable consequence of the target crime.  The natural and probable consequences

2  doctrine provided an alternative theory under which Petitioner might have been found guilty of

3  murder, but nothing in the instructions suggested that liability imposed under this theory must be

4  the same for everyone who participated in the attack on Franklin.  To the contrary, CALCRIM

5  403 stated that the natural and probable consequences for which one is responsible is to be

6  determined by what, "in light of all the circumstances surrounding the incident," one should have

7  "reasonably expected to occur if nothing unusual has intervened."  What is a reasonably

8  foreseeable consequence "depend[s] on the circumstances surrounding the conduct of both the

9  perpetrator and the aider and abettor" and requires individualized consideration by the jury for

10 each participant.  *Woods*, 8 Cal. App. 4th at 1587.  The jury is presumed to have followed these

11 instructions.  *Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985).

12      The state court's conclusion that the instructions given were unambiguous and properly

13 applied by the jury does not violate federal law or *McGuire*.  The California Court of Appeal

14 correctly found that under the instructions given the jury could have determined that Petitioner

15 aided and abetted the discharge of a firearm from a motor vehicle, and the natural and probable

16 consequence could have been manslaughter, second degree murder, or first degree murder.

17 Petitioner's argument that the jury was misled into believing that it could not convict him of a

18 lesser degree of murder than the perpetrator is belied by the record.

19      Finally, any error in the instructions on aiding and abetting did not prejudice Petitioner

20 because, for the reasons discussed above, there was ample evidence supporting the conviction.

21 Any error in the jury instructions on aiding and abetting, therefore, did not have a "substantial

22 and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507

23 U.S. 619, 637 (1993) (internal quotation and citation omitted).  Because there is no reasonable

24 likelihood the jury misapplied the aiding and abetting instructions in a manner that violates the

25 Constitution, the state court's denial of Petitioner's claim was neither contrary to nor an

26 unreasonable application of federal law.

27      2.    Prosecutorial misconduct

28      Petitioner next claims that the prosecutor committed misconduct during cross-

examination when he intimated that Petitioner made up his testimony and attacked the integrity

of defense counsel.  When Petitioner was on the stand, the prosecutor asked him how many

times he met with counsel to discuss his testimony; whether Petitioner knew anything about the

law of self-defense before meeting with counsel; and when Petitioner had "come up with the

version" of events to which he testified.  (RT 1250-52.)  Defense counsel's objection was

sustained on the grounds of privilege.  (RT 1250.)  Outside the presence of the jury, defense

counsel noted his "concern" with the prosecutor's line of questioning, stating that the prosecutor

accused him of suborning perjury.  (RT 1282.)  The court and prosecutor reminded defense

counsel that the objection was sustained and that the prosecutor refrained from continuing that

line of questioning.  (RT 1283-84.)  No further discussion was had on the matter.

The California Court of Appeal found that this claim was not properly preserved for

appeal.  (Op. at 9.)  Relying on state cases, the court stated that because defense counsel did not

request a curative instruction or admonition to the jury in addition to objecting to the challenged

statements, Petitioner waived this claim.  (*Id.*)

A federal court will not review questions of federal law decided by a state court if the

decision also rests on a state law ground that is independent of the federal question and adequate

to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which

a state prisoner has defaulted his federal claim in state court pursuant to an independent and

adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner

can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.  *Id.* at 750.  The Ninth Circuit has recognized and applied the California

contemporaneous objection rule in affirming the denial of a federal petition on grounds of

procedural default where there was a complete failure to object at trial.  *See Paulino v. Castro*,

371 F.3d 1083, 1092-93 (9th Cir. 2004).

In *Paulino*, as here, the state court of appeal addressed the challenged claim on the

merits; however, it also clearly and expressly held that the issue was waived because defense

counsel failed to request a curative instruction.  *See id.* at 1092-93.  Petitioner does not argue that

this Court is nevertheless permitted to consider his claim.  He does not assert that the contemporaneous objection rule is unclear, inconsistently applied, or not well-established.  *See id.* at 1093.  Nor does he claim that there was cause or prejudice for his procedural default.  *See id.*  Thus, the Court cannot review this claim as it is barred.

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner has failed to show a violation of his federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  For the reasons set out in the discussion above, Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

IT IS SO ORDERED.

DATED: _11/29/2010_____

_____
LUCY H. KOH
United States District Judge